## Hofmann Estate

*John I. Hartman, Jr.,* for appellant.
*Ira G. Barrows,* for Commonwealth.

APPEL, *Adm. J.,* January 22, 1976—The Commonwealth filed a protest to its appraisal of real estate in the sum of $18,500 and the Department of Revenue, Inheritance Tax Board, sustained the protest by which the value of the realty was established at $23,000. The executor has appealed to the court; wherefore, the matter is now before us for disposition.

The following chronology of events requires consideration and determination:

| | |
|---|---|
| May 21, 1974 | —Henrietta S. Hofmann died. |
| July 10, 1974 | —Appraiser employed by personal representative appraised realty at $18,500. |
| October 10, 1974 | —Realty sold for $23,000. |
| March 6, 1975 | —Copy of United States estate tax return filed. Realty therein valued at $23,000. |
| April 7, 1975 | —Pennsylvania Inheritance Tax form RCC-33 filed by personal representative. Realty therein valued at $18,500. |

Personal representative's account called for audit and continued.

April 15, 1975 —Notice of filing of appraisement, form RCC-81 sent to personal representative. Realty valued at $18,500.

Certificate of Register of Wills of Lancaster County issued certifying that the fund before the court is not subject to the payment of inheritance tax.

April 17, 1975 —Audit closed.

May 15, 1975 —Adjudication with order of distribution filed by the court.

June 4, 1975 —Adjudication and order of distribution confirmed absolutely.

Thereafter the protest was filed and subsequently it was sustained by the Department of Revenue, Inheritance Tax Board.

From the above chronology of events, there are two questions to be considered by the court, as follows:

1. Does the action of the Inheritance Tax Board in sustaining the protest whereby the appraised value of the real estate was increased by $4,500 supersede the adjudication filed by the court in which there was no award of tax made, the adjudication being based on the certificate of the register of wills which was issued prior to the expiration of the period for the filing of a protest of the tax appraisement?

2. What effect, if any, shall be given to the sale of an asset on October 10, 1974, in determining the date of death value of an asset, the owner of which died on May 21, 1974?

The contention of the taxpayer is that the filing of the adjudication after the filing of the register's certificate causes the protest which was subsequently filed with the Inheritance Tax Board to be of no effect. The authority for filing a protest is contained in section 1001 of the Inheritance and Estate Tax Act of June 15, 1961, P. L. 373, 72 P.S. §2485.1001, which provides as follows:

"Protest; notice; appeal—Any party in interest, including the Commonwealth and the personal representative, not satisfied with the appraisement, the allowance or disallowance of deductions, the assessment of tax, or supplements thereto, or any other matter relating to any tax imposed by this act, within (60) days after receipt of notice of the action complained of may—

"(1) file with the Department of Revenue a written protest thereagainst sending a copy thereof to the Department of Justice . . ."

The conclusion which is here sought by the taxpayer would negate the 60-day period under the circumstances here existing. We are aware of numerous instances in which the personal representative files his account and tax appraisal simultaneously, so that even when the notice of the appraisement is filed promptly by the Department of Revenue the 60-day period will not have elapsed prior to an adjudication being confirmed absolutely. The only protection then open to the register of wills as the agent for the collection of the tax would be to defer the issuance of his certificate, required by this court as a requisite to adjudication, until the passage of the 60-day period. On the other hand, the problem may be averted by an earlier filing of the inheritance tax report by the personal representative.

We recognize the importance of ascribing finality to an adjudication. On the other hand, we are reluctant to interfere with a clearly stated legislative enactment. Because the facts presently before the court require, in our opinion, that the matter be resolved on a circumstance peculiar to this case, we do not determine the broader aspect which has been indicated but we do suggest the possible need for legislative clarification pertaining to the procedures to be followed in inheritance tax matters.

The circumstance which we believe compels us to sustain the action of the Inheritance Tax Board is that the sale of the real estate within five months of the date of death was not disclosed by the personal representative in the return filed by it. Whether this information should have been disclosed leads into the second question which we have suggested is necessary for the determination of this appeal. If a sale subsequent to death may be considered in determining date of death values, then the failure to disclose is of a significant and material item and, in our opinion, subjects the appraisement to revision based on nondisclosure or mistake.

Our research has led to four cases in which the question has been discussed. In Brillinger's Estate, 62 York 60 (1948), the valuation of the stock of the York Trust Company was at issue. Decedent had died on November 12, 1947, and the court permitted evidence for its consideration of sales on November 6, and December 4, 1947, and on January 15, 1948.

In two cases arising in Lehigh County, there were sales of real estate within four to seven months and, in each instance, the court held that the sales prices did not represent date of death value. However, in each of the cases there was testimony of improve-

ment of economic conditions and of rapid increase in the value of property which caused the court to reach the conclusion which it reached. See Estate of G. B., F. Deily, 19 Lehigh 401 (1942), and Estate of Kate Engelman, 22 Lehigh 317 (1947). Actually, in the Engelman case, the court used the sales price decreased by 17 percent to obtain the date of death value, the percentage having been determined to be the increase in value between the date of death and the dates of sales.

The valuation of Immergrum, the vast estate of the late Charles Schwab, at Loretto, was before the court in the estate of his spouse, Estate of Schwab, 56 Dauphin 57 (1944). Mrs. Schwab had died in the spring of 1939 and the realty was appraised in March 1942, at $150,000. On October 4, 1942, it was sold at public auction for $62,300. In the absence of evidence of depreciation during the intervening three and a half years, it was held that the sales price was the best evidence of the date of death market value. The court said:

"[W]e are convinced that the sale price constitutes the best evidence of the 'clear value' of 'Immergrum' for transfer inheritance tax purposes on the date of Mrs. Schwab's death and therefore is sufficient to overcome the prima facie presumption in favor of the appraisement."

We conclude that after-death sales of real estate are evidential as to date of death value and that the failure to disclose the sale which had occurred prior to the filing of appraisement by the personal representative tainted the procedure which followed thereafter in connection with ascertaining the amount of inheritance tax payable to the Commonwealth. Since there has been no evidence presented to establish an increase in value because of

improved economic conditions, we conclude that the action of the Inheritance Tax Board in fixing the sales price of $23,000 as the appraised value was correct. In sustaining the appeal, we note that in filing the United States estate tax return the personal representative did not elect to use the optional valuation date but nevertheless did value the realty at $23,000. We are unable to determine the criteria by which it has been asserted that one piece of property is worth one sum for the government but at the same time is worth a different sum for another government. At all events, the conclusion which is here reached would dispel that disparity.

Counsel for the Commonwealth and for the taxpayer have each discussed Forsyth Estate, 34 D. & C. 2d 655 (1964); however, we believe that the case is not apposite since it involves an appraisement filed by the personal representative prior to an adjudication of an account by the court but not filed by the Commonwealth until approximately six months after the adjudication. In the present case, the appraisement had been filed by the Commonwealth prior to the adjudication; however, we have concluded that it is not entitled to finality as to the real estate because of the absence of essential information which should have been forthcoming from the taxpayer.

The taxpayer has suggested that the failure to include expenses of sale in the statement of debts and deductions is a factor to be considered. We agree and, therefore direct, that as an incident of sustaining the appeal the personal representative shall be permitted to file a supplemental statement of debts and deductions listing those expenses of sale entitled to be deducted in the determination of the inheritance tax which is payable.